NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| 1199 SEIU UNITED HEALTHCARE WORKERS EAST, | : : : : | Civil Action No. 15-2345 (SRC) |
| Plaintiff, | : : | |
| | : | OPINION |
| v. | : : | |
| GRE PROPERTIES JERSEY CITY LLC, GRE JERSEY CITY INC. and MAJESTIC REHABILITATION AND NURSING CENTER, INC., | : : : : : | |
| Defendants. | : | |

**CHESLER**, District Judge

      This matter comes before the Court on Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed the motion. The Court has considered the papers filed by the parties, and for the reasons that follow, denies the motion to dismiss.

    **I.**    **BACKGROUND**

      This is an action to compel arbitration pursuant to a collective bargaining agreement ("CBA") negotiated by Plaintiff 1199 SEIU United Healthcare Workers East ("Plaintiff" or "1199 SEIU"). 1199 SEIU is a labor union which represents registered nurses, licensed practical

1

nurses, certified nurses' aides, and others employed by a long-term care nursing facility located at 620 Montgomery Street in Jersey City, New Jersey. Until March 1, 2015, the nursing facility was operated by Liberty House Nursing Home of Jersey City, Inc. ("Liberty House"). Defendants GRE Properties Jersey City LLC and GRE Jersey City Inc. (collectively, "GRE") have at all relevant times owned the real property and buildings at 620 Montgomery Street. Defendant Majestic Rehabilitation and Nursing Center, Inc. ("Majestic") has operated the nursing facility at the GRE property since March 1, 2015.

The dispute at issue in this lawsuit stems from the court-ordered transfer of Liberty House's nursing facility operations and the eviction of Liberty House from the GRE property. Following litigation initiated by Liberty House against GRE concerning a lease renewal, the Superior Court of New Jersey, Chancery Division held that GRE was the owner of the bed rights at the nursing facility, that GRE was entitled to seek a license from the state Department of Health to operate a nursing facility and that Liberty House was required to vacate the property after GRE's application was approved by the Department of Health. See Liberty House Nursing Home of Jersey City, Inc. v. GRE Jersey City, Inc., A-0206-11T1, 2013 WL 1187838 (N.J. Sup. Ct. App. Div. Mar. 22, 2013). The Appellate Division affirmed the judgment on March 25, 2013. Id. According to the Complaint, at some point thereafter, GRE assigned its right to operate the nursing facility to Defendant Majestic. The Complaint alleges that, as ordered by the Superior Court of New Jersey, Liberty House transferred operation of the nursing facility to Defendants effective March 1, 2015.

The CBA at issue was entered into by 1199 SEIU, Liberty House and various other employers. It was effective for the period from March 13, 2008 through February 28, 2013, and

2

then extended, as modified in arbitration, through June 30, 2016. Defendants GRE and Majestic are not parties to the CBA. By letter dated January 5, 2015, Majestic informed 1199 SEIU that it would be taking over operation of the nursing facility at the GRE property but that it would not assume the terms of the CBA between 1199 SEIU and Liberty House. On January 28, 2015, 1199 SEIU demanded arbitration with Majestic and GRE to address, among other issues, their alleged violation of Article 32 of the CBA, which obligates successors to the contracting parties to abide by the CBA and requires an entity which acquires the contracting employer's business to assume all terms and conditions of the CBA. Article 32 also states that disputes arising under that provision shall be subject to the agreement's arbitration procedure. Under Article 11, the CBA provides that 1199 SEIU has the right to submit disputes regarding the "application, interpretation or performance" of the Agreement's terms to arbitration for resolution.

 According to the Complaint, Defendants are bound by the CBA, under Article 32, to arbitrate the dispute concerning the extent of their successor obligations. It asserts that Defendants are successors because there is "substantial continuity" between the business operated by Liberty House at the GRE property in Jersey City prior to March 1, 2015 and the business operated by Defendants at that location afterwards. The Complaint alleges "Defendants have continued the employment at the Nursing Home of almost all of the Unit Employees," that is, those employees represented by 1199 SEIU. (Compl. ¶ 20.) In particular, it avers that "of the 135 Unit Employees employed by Liberty House at the Nursing Home immediately prior to the Transfer Date [March 1, 2015], all but one were offered continued employment there by Defendants. 124 of these Unit Employees have continued to work at the Nursing Home after the transfer." (Id.) The Complaint further alleges that Defendants have hired only two new

managers since their takeover of the nursing facility and have continued to employ the same managers in the departments in which 1199 SEIU-represented employees work. As such, the Complaint states that "[o]n and after the Transfer Date, Unit Employees have continued to perform the same work in the same manner, caring for the same residents, under almost all of the same managers, at the same workplace (the Nursing Home), as before the Transfer Date.")  (Id. ¶23.)

Defendants have refused to arbitrate their dispute with 1199 SEIU, on the basis that they are not signatories to the CBA.  1199 SEIU filed this lawsuit to compel GRE and Majestic to arbitrate pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    DISCUSSION

### A.  Legal Standard

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). While the Court must accept all factual allegations as true and construe the complaint in the light

most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

    B. Analysis

This litigation presents a sole cause of action to compel arbitration under § 301 of the LMRA. In relevant part, Section 301 authorizes federal lawsuits "for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal courts have exercised the jurisdiction conferred by LMRA § 301 even in situations in which the employer at issue is not a signatory to the collective bargaining agreement giving rise to the dispute but is instead alleged by the labor union to be bound by the contract as a successor. See, e.g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964); AmeriSteel Corp. v. Int'l B'hood of Teamsters, 267 F.3d 264, 265 (3d Cir. 2001); see also Gen. Teamsters, Chauffeurs & Helpers, Local Union No. 249 v. Bill's Trucking, Inc., 493 F.2d 956, 960 (3d Cir. 1974) (following Wiley to hold that "there is no absolute bar to the enforcement of labor agreements against 'successor' employers in section 301 actions"). In this case, 1199 SEIU has alleged that Defendants are successors bound by the CBA under Article 32 and have violated the CBA by refusing to submit to arbitration to resolve the parties' dispute concerning the extent of Defendants' obligations under the agreement. Thus, insofar as Defendants argue that this Court lacks jurisdiction

5

because the Complaint fails to allege the existence of any contract between SEIU and Defendants, the argument is unavailing.

Plaintiff's claim relies on the theory that Defendants are obligated to arbitrate under the CBA according to the successorship doctrine and under Article 32, which makes the agreement binding on successor employers. Under the successorship doctrine, a court may impose legal obligations undertaken by one employer on its successor. Shaffer v. Mitchell Transport, Inc., 635 F.2d 261, 265-66 (3d Cir. 1980); see also Am. Bell Inc. v. Fed'n of Telephone Workers of Pa., 736 F.2d 879, 888 (3d Cir. 1984) ("In general the successor doctrine is an extra-contractual remedial tool for imposing certain labor obligations on a new employer that has taken over the operations of an old employer."). The Supreme Court has noted that the question of what constitutes a successor depends on the facts of each case and on the particular legal obligation at issue. Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd., 417 U.S. 249, 263 n.9 (1974). To evaluate whether the Complaint states a plausible claim under LMRA § 301, the Court must determine whether it pleads sufficient facts which, taken as true, establish that Defendants are successors to Liberty House insofar as the CBA's duty to arbitrate is concerned. The Court finds that it does.

Under certain circumstances, the "successor employer may be required to arbitrate with the union under the [collective bargaining] agreement" formed by its predecessor." Wiley, 376 U.S. at 548; cf. N.L.R.B. v. Burns Int'l Security Svcs., Inc., 406 U.S. 272, 284 (1972) (holding that a successor employer may be bound to recognize and bargain with a labor union, but it may not be bound by the substantive provisions of a contract it did not form or assume). In Wiley, the Supreme Court held that to compel arbitration against a non-signatory employer, there must

6

be "substantial continuity of identity in the business enterprise before and after a change of ownership." Wiley, 376 U.S. at 551.  A necessary component of this feature is "substantial continuity in the identity of the work force across the change in ownership" of a business enterprise.  Howard Johnson, 417 U.S. at 263.  In a different context, concerning an employer's obligation to honor unfair labor practice awards issued against a predecessor employer, the Supreme Court has described a successor employer as one that "has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations."  Golden State Bottling Co. v. N.L.R.B., 414 U.S. 168, 184 (1973).  Other factors the Third Circuit has identified as relevant in determining whether to impose the obligations of a collective bargaining agreement on a successor employer include "the continuity of business operations, supervisory personnel, physical plant and location, continuity in the nature of the product or services, and continuity in the methods of production, sales, or inventorying."  Am. Bell, 736 F.2d at 888; see also Bill's Trucking, 493 F.2d at 963-64 (listing factual considerations which bear on the question of whether a successor employer may be bound by a predecessor's labor contract).

      The Complaint alleges that Defendants have hired a majority of the 1199 SEIU bargaining unit employees who worked for Liberty House.  Indeed, according to the Complaint, of the 135 union members previously employed at the nursing facility by Liberty House, 124 continued to work at the very same facility after Majestic assumed operations.  Continuity in the nature of the business enterprise undertaken by Defendants, in the physical location of the nursing facility, in the performance of employment duties by the labor union members and in supervisory and management personnel has also been alleged.  Assuming these facts to be true, as the Court must

7

on a Rule 12(b)(6) motion, the Court finds that the Complaint sufficiently states that Defendants have a duty to arbitrate under the CBA as successors to Liberty House.  Thus, the claim to compel arbitration under § 301 of the LMRA survives Defendants' motion to dismiss.

Defendants have denied that they are successors to Liberty House.  Moreover, relying on the Third Circuit's holding in AmeriSteel, they have argued that, even if considered successors, they are under no obligation to arbitrate because they have not consented to and indeed expressly rejected the terms of the CBA between Liberty House and SEIU.  See AmeriSteel, 267 F.3d at 274 (holding that, because a successor employer cannot be bound against its will by the substantive provisions of its predecessor's CBA, it cannot be compelled to submit to arbitration under the terms of that agreement).  Defendants here have indicated that the Liberty House employees were terminated upon Liberty House's cessation of operations at the nursing facility and that Majestic expressly notified the Liberty House employees and 1199 SEIU that it would not assume the terms of the CBA.  Defendants have also indicated that they made it clear that, while Liberty House employees would be free to apply for employment in the Majestic-run nursing facility, Defendants would not abide by the same terms and conditions of employment in place under their employment by Liberty House.

The reasons Defendants proffer for their lack of successor status, however, rely on factual assertions which are not apparent from the face of the Complaint, and indeed, to some extent are wholly extraneous to the Complaint.  In such a circumstance, in which the party opposing arbitration has come forward with evidence that it is not bound by an agreement to arbitrate, but its defense is not apparent on the face of the Complaint (and documents attached thereto), the Third Circuit has held that the question of arbitrability cannot be resolved on a Rule 12(b)(6)

8

standard. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-774 (3d Cir. 2013) (setting forth the standard applicable to motion to compel arbitration on a claim governed by the Federal Arbitration Act).  Instead, it requires the more searching factual inquiry appropriate under a motion for summary judgment. Id.  While Defendants' factual assertions may bear on the question of whether Defendants can be considered successors to the CBA, the Court cannot conclude from the face of the Complaint that they are not.

For the same reason, AmeriSteel is inapplicable at this stage of the proceedings to foreclose the § 301 claim.  In that case, the Third Circuit affirmed an injunction preventing a labor union local from forcing a non-signatory employer to submit to arbitration under a collective bargaining agreement. AmeriSteel, 267 F.3d at 265.  In holding that the successor employer was not required to arbitrate by the collective bargaining agreement between the union local and the predecessor employer, the Court of Appeals emphasized that the purchase agreement between the predecessor and successor companies "included various provisions expressly stating that AmeriSteel was not to be bound by the CBA" and that, pursuant to the Supreme Court's holding in Burns, such agreement must be respected. Id. at 266, 273.  Again, while Defendants raise factual issues regarding their express rejection of the CBA, such issues cannot be resolved on this motion to dismiss and require further development unsuited to a Rule 12(b)(6) review of the sufficiency of a complaint. See, e.g., Bill's Trucking, 493 F.2d at 964 (reversing district court's order dismissing a § 301 claim against a successor employer, concluding that the cases presented factual issues concerning whether the successor could be bound by the predecessor's labor agreement).

9

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that the Complaint states a plausible claim to compel arbitration under LMRA § 301.  The motion to dismiss will be denied, and an appropriate Order will be filed.

 s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated: August 14, 2015